UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
    ANTHONY MACK,                                            :
                                                             :
                                                             :
                                      Petitioner,            :
                                                             :
                    -v-                                      :
                                                             :
    SUPT. LAVALLEY,                                          :
                                                             :
                                      Respondent.            :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/31/2016

1:13-cv-8194-GHW

MEMORANDUM AND ORDER
ADOPTING REPORT AND
RECOMMENDATION

GREGORY H. WOODS, United States District Judge:

On February 22, 2008, Petitioner Anthony Mack was convicted of Attempted

Robbery in the Second Degree, in violation of New York Penal Law §§ 110.00 and 160.10(2)(b).

The evidence at trial showed that Mr. Mack had attempted to rob a taxi driver after a lengthy cab

ride.  Mr. Mack's counsel argued that he had only attempted to evade paying the cab fare—not to

take money from the driver—but the jury disagreed.  Justice Renee A. White subsequently sentenced

Mr. Mack as a persistent violent felony offender to a term of fourteen years to life in state prison.

The Appellate Division affirmed his conviction and sentence on February 9, 2012.  938 N.Y.S.2d 72

(N.Y. App. Div., 1st Dept., 2012).  Mr. Mack then sought leave to appeal to the New York Court of

Appeals; that court denied leave on May 21, 2012.  *People v. Mack*, 19 N.Y.3d 865, 947 N.Y.S.2d 413

(2012).

Mr. Mack filed this timely petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He

raises three grounds for relief:  first, that failure to instruct the jury that theft of services did not

constitute attempted robbery denied him a fair trial; second, that he should have been permitted to

introduce his own exculpatory statement made at the time of his arrest; and third, that he was

improperly sentenced as a persistent violent felony offender in violation of the principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

On March 5, 2014, the Honorable Lewis A. Kaplan, United States District Judge, referred the petition to Magistrate Judge Henry B. Pitman.  On April 17, 2014, this case was reassigned to me, and on November 24, 2015, Judge Pitman issued a Report and Recommendation ("R & R") recommending that I deny the petition.  Mr. Mack filed objections to Judge Pitman's R&R.  After reviewing the briefing, the R&R, the objections, and the underlying record, I adopt Judge Pitman's R&R and deny the petition for a writ of habeas corpus.

## I.  Standard of Review

District courts may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge" 28 U.S.C. § 636(b)(1).  A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865-LTS-GWG, 2008 WL 4810043, *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation omitted).

Objections of parties appearing *pro se* are "generally accorded leniency" and construed to "raise the strongest arguments that they suggest."  *Milano v. Astrue*, No. 05-cv-6527-KMW-DCF, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008) (citation omitted).  However, even *pro se* objections to an R & R "must be specific and clearly aimed at particular findings in the magistrate's

2

proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior

argument." *Pinkney v. Progressive Home Health Servs.*, No. 06-cv-5023-LTS-JCF, 2008 WL 2811816, at

*1 (S.D.N.Y. July 21, 2008) (citation omitted).

## II.  Mr. Mack's Objections

Mr. Mack filed objections to the R & R on February 5, 2016, and supplemented those

objections with an additional document styled as an "Objections Insert" postmarked February 22,

2016.  Dkt. 34, 35.  Although the Court had twice extended Mr. Mack's time to file his objections, all

objections were due no later than February 10, 2016.  Dkt. 30, 33.  Thus, the Objections Insert,

which was mailed twelve days after the already-extended deadline for objections, was untimely.

Nonetheless, the Court has reviewed and considered both of Mr. Mack's submissions objecting to

the R & R.

Mr. Mack raises objections to the R & R that track the three grounds that are the basis of his

habeas petition:  (1) the trial court's failure to deliver the jury instruction to which he argues he was

entitled, (2) the exclusion of a post-arrest exculpatory statement he made, and (3) the sentencing

enhancement applied to him as a persistent violent felony offender.  As Mr. Mack himself

acknowledges, the arguments in his objections with respect to his first point reiterate those

presented in his original petition.  Dkt. 34 ("Objections") at 24.  This Court has reviewed Mr.

Mack's petition, the objections regarding this first point, and the underlying record, and has

reviewed the R & R for clear error and found none.  With respect to the second and third points,

however, Mr. Mack has raised specific objections separate from his original arguments.

The R & R recommends denial of Mr. Mack's petition on the basis that his exculpatory post-

arrest statement should have been admitted.  It concludes that the Appellate Division's "clear and

unequivocal rejection of this claim on state procedural grounds precludes it from serving as a basis

for habeas relief."  R & R at 28.  Judge Pitman also notes that

3

> Petitioner raises no argument in response to the procedural bar – he does not claim that the state procedural rule is not independent and adequate, he does not claim that there was cause for and prejudice from his failure to comply with New York's preservation requirement and he does not claim that a failure to address the merits of his claim will result in a fundamental miscarriage of justice.

*Id.* In response, Mr. Mack asserts in his objections that he did raise potential arguments in response to the procedural bar, that the procedural bar is not an adequate and independent state law ground, and that failure to review the claim would be a miscarriage of justice. Objections at 24. Although it is clear that Mr. Mack carefully read the R & R, he does not offer any explanation as to how his constitutional challenge to the trial court's ruling on this point was preserved. And, after reviewing the trial transcript, it is plain that defense counsel did not raise any constitutional challenges at the time the trial court ruled on this issue. Tr. 371-72.

Judge Pitman noted that the Appellate Division had held that Mr. Mack's "constitutional challenges to the court's ruling are unpreserved," *People v. Mack*, 938 N.Y.S.2d 72, 73 (N.Y. App. Div., 1st Dept., 2012), and then Judge Pitman correctly held that "New York's contemporaneous objection rule has routinely been upheld as an adequate and independent state procedural bar sufficient to preclude federal review." R & R at 28 (collecting cases); *see also Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule . . . . [that] constitutes an independent and adequate state law ground for disposing of a claim that the defendant's Sixth Amendment right to a public trial has been violated.") (citations omitted).

Because the contemporaneous objection rule is an independent and adequate state law ground, a court evaluating a habeas petition based on such a claim evaluates only whether the state court ruling at issue "serve[d] no perceivable state interest" or represented an "unyielding application of the general rule" regarding objections. *Downs*, 657 at 106 (citations omitted). This is not the rare case that falls into that "limited category." *Id.* at 104. To the contrary, here the Appellate Division's

holding that Mr. Mack's claim was unpreserved furthers the state's interest in requiring that the trial court have the opportunity to address the specific legal error raised on appeal. Therefore, the Court finds Mr. Mack's assertion that his second claim is not barred by an adequate and independent state ground to be without merit.

Finally, in Mr. Mack's objection to the R & R's conclusion that his sentencing did not violate clearly established law as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he concedes that the existence of his prior convictions was not a question that needed to go to the jury. Instead, he maintains that "the nature of the crime[s] and petitioners [sic] character and conduct" should have been put before the jury. Objections at 38-39. The Court understands that Mr. Mack contends that the trial court found additional facts, beyond his convictions, that contributed to his being sentenced as a persistent violent felony offender.

The *Apprendi* court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490-91. "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Cunningham v. California*, 549 U.S. 270, 290 (2007).

Mr. Mack raises an *Apprendi* challenge to his sentencing; he appears to be under the impression that, in order to sentence him as a persistent violent felony offender, the trial judge had to engage in additional fact finding aside from the fact of his prior convictions, in violation of *Apprendi*. In this argument, Mr. Mack may be conflating two separate New York statutes, one of which did, in the past, raise questions about the constitutionality of persistent offender sentencing enhancements.

The State of New York has two statutory provisions relating to the sentencing of felony

offenders:  the persistent felony offender statute, New York Penal Law § 70.10, and the persistent

violent felony offender statute at issue here, New York Penal Law § 70.08.  In the wake of *Apprendi*,

the district courts in this Circuit were at first divided as to whether the persistent felony offender

statute, § 70.10, ran afoul of the Sixth Amendment.  *Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010),

*cert. denied*, 562 U.S. 1304 (2011); *see also Hernandez v. Williams*, No. 1:10-cv-03073-ALC-FM, 2013 WL

5405472, at *7 (S.D.N.Y. Sept. 26, 2013).  The persistent felony offender statute first defines a

persistent felony offender as someone who has been previously convicted of two or more felonies; if

a defendant qualifies, the statute then allows the sentencing court to impose any sentence authorized

for an "A-1" felony if "the history and character of the defendant and the nature and circumstances

of his criminal conduct indicate that extended incarceration and life-time supervision will best serve

the public interest."  N.Y. Penal Law § 70.10(2).  After *Apprendi*, district courts reached

contradictory conclusions as to whether the fact finding authorized by the second part of the statute

was constitutional.  *Portalatin*, 624 F.3d at 75-78; *Hernandez*, 2013 WL 5405472 at *7.  In 2010,

however, the Second Circuit resolved the issue when it ruled *en banc* that the New York persistent

felony offender statute did not require unconstitutional fact finding.  *Portalatin*, 624 F.3d at 90-91.

In this case, Mr. Mack was not sentenced as a persistent felony offender under § 70.10, but

as a persistent violent felony offender under § 70.08.  In sentencing persistent violent felony

offenders, judges need not consider "the history and character of the defendant" or "the nature and

circumstances of his criminal conduct."

> A persistent *violent* felony offender is defined as a person who stands convicted of a
> violent felony (as defined in N.Y. Penal Law § 70.02) and has previously been
> convicted of two or more violent felonies (as defined in N.Y. Penal Law §
> 70.04(1)(b)).  Such an individual is subject to an enhanced sentencing range, with a
> maximum term of life in prison, and a minimum term fixed, based on the category of
> the offense, anywhere from twelve to twenty-five years.  A judge does not have
> discretion to depart from that enhanced range: '[w]hen the court has found . . . that
> a person is a persistent felony offender the court *must* impose an indeterminate
> sentence of imprisonment.'

6

*Portalatin*, 624 F.3d at 73-74 (2d Cir. 2010) (citing N.Y. Penal Law § 70.08(2), (3)).

Because the trial judge did not have to find any additional facts beyond Mr. Mack's previous convictions, it was not a violation of *Apprendi* for Mr. Mack to be sentenced as a persistent violent felony offender.  Additionally, the New York Court of Appeals has held that sentencing a defendant as a persistent violent felony offender does not violate the standards articulated in *Apprendi*, *People v. Bell*, 15 N.Y.3d 935 (N.Y. 2010).  And, due to the differences between New York's persistent felony offender statute and its persistent violent felony offender statute and the Second Circuit's decision in *Portalatin*, "the federal district courts considering the issue have unanimously concluded that the New York persistent *violent* felony offender statute is constitutional."  *Hernandez*, 2013 WL 5405472, at *8 (emphasis original) (collecting cases).  Therefore, I cannot conclude that sentencing Mr. Mack as a persistent violent felony offender violated clearly established law.

Thus, there is no basis in law for Mr. Mack's objection that *Apprendi* requires this Court to grant his petition.

### III. Conclusion

The Court has considered Mr. Mack's objections to the R & R and found them to be without merit.  The Report and Recommendation is adopted, and the petition is DENIED.  The Clerk of Court is directed to enter judgment accordingly, and to close this case.

SO ORDERED.

Dated: May 31, 2016
       New York, New York

_____
GREGORY H. WOODS
United States District Judge

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ANTHONY MACK,                       :

                   Petitioner,      :    13 Civ. 8194 (GHW)(HBP)

     -against-                      :    REPORT AND
                                         RECOMMENDATION
SUPT. LAVALLEY,                     :

                   Respondent.      :

----------------------------------X
```

PITMAN, United States Magistrate Judge:


TO THE HONORABLE GREGORY H. WOODS, United States

District Judge,


I.  Introduction


Petitioner, Anthony Mack, seeks, by his pro se peti-
tion, a writ of habeas corpus pursuant to 28 U.S.C. § 2254
vacating a judgment of conviction entered on February 22, 2008,
after a jury trial, by the Supreme Court of the State of New
York, New York County (White, J.), for one count of attempted
robbery in the second degree, in violation of New York Penal Law
Sections 110.00 and 160.10(2)(b).  Pursuant to that judgment,
petitioner was sentenced as a persistent violent felony offender
to an indeterminate term of imprisonment of fourteen years to

life.  Petitioner is currently incarcerated pursuant to the
judgment.

For the reasons set forth below, I respectfully recom-
mend that the petition be denied.

II.  <u>Facts</u>

    A.  Facts Giving Rise to
       <u>Petitioner's Conviction</u>

Petitioner's conviction arises out of his attempted
robbery of a cab driver in Manhattan on the night of July 2,
2007.

At approximately 10:30 p.m. on July 2, 2007, petitioner
hailed a cab in Brooklyn and directed the driver to take him to
an address in Manhattan (Tr.[1] 261-63).  After arriving in the
vicinity of the Bowery and Canal Street in Manhattan, petitioner
told the driver that he wanted to return to Brooklyn, to the
intersection of Eastern Parkway and Troy Street (Tr. 265).  After
arriving at that location, the driver observed petitioner leave
the cab to meet briefly with a friend, after which the petitioner
got back in the cab and told the driver to take him back to the
Bowery and Canal Street (Tr. 266).  The driver complied. and

---

[1]"Tr." refers to the transcript of petitioner's trial.

2

after arriving at the Bowery and Canal Street, petitioner told
the driver to take him to First Avenue and 42nd Street (Tr. 266).
Again, the driver complied (Tr. 267). After arriving at First
Avenue and 42nd Street, petitioner told the driver to make a left
turn on to Second Avenue (Tr. 267). Given the apparently aimless
nature of petitioner's instructions, the driver began to worry
that petitioner did not know where he wanted to go (Tr. 267).
The driver slowed the cab in the vicinity of 38th Street and
Second Avenue and asked petition if he knew where he wanted to go
and demanded that petitioner pay the $39 fare that had then
accrued (Tr. 268).

Petitioner responded by saying "'Yeah, you know what?
I have a gun. I am going to kill you . . . You are the one, you
have to give me the money now'" (Tr. 268). Petitioner then
placed something against the driver's neck (Tr. 268-69). Without
turning around, the driver told petitioner he would give peti-
tioner "whatever," and petitioner stated "'Motherfucker, now you
give me the money'" (Tr. 269). The driver did not see the object
petitioner held against his neck, but it was hard and, based on
petitioner's statements, the driver believed it to be a gun (Tr.
271, 273). Petitioner briefly removed the object from the
driver's neck, and the driver took the opportunity to close and
lock the bullet-proof partition between the cab's front and rear

3

seats and to lock the cab's doors (Tr. 273-74). The driver turned on the cab's emergency lights and drove to the intersection of 34th Street and Fifth Avenue -- the location of the Empire State Building -- because he knew there would be police officers there (Tr. 275-76). Because the cab's doors had been locked, petitioner was contained in the cab's rear seat; during the trip to 34th Street and Fifth Avenue, petitioner repeatedly screamed "'Motherfucker, stop the car. Stop the car'" (Tr. 277).

After arriving at 34th Street and Fifth Avenue, the driver stopped the cab; two police officer approached and asked the driver what was going on (Tr. 282). The driver told the officers that petitioner had threatened to kill him (Tr. 283, 286). Petitioner was then arrested (Tr. 283-84). The arresting officers recovered a cell phone from petitioner, but no firearm was recovered from petitioner or the vicinity of the cab (Tr. 347-49).

B. State Court
   Proceedings

Assisted by counsel, petitioner appealed his conviction to the Appellate Division of the Supreme Court for the First Department. Counsel's brief asserted five claims: (1) the Trial Court improperly failed to advise the jury that attempted fare

evasion could not constitute attempted robbery; (2) the Trial
Court improperly precluded a police officer from testifying to a
purportedly exculpatory statement made by petitioner at the time
of his arrest; (3) the verdict was against the weight of the
evidence; (4) the Trial Court improperly sentenced petitioner on
the basis of factual findings that were made by the Court and not
the jury and (5) the sentence of fourteen years to life was harsh
and excessive (State Court Records (Docket Item ("D.I.") 7), at
SR 002-03).  Petitioner also submitted a supplemental pro se
brief to the Appellate Division raising a number of claims, none
of which are relevant here (State Court Records (D.I. 7) at
SR104-05).

The Appellate Division affirmed petitioner's convic-
tion.  People v. Mack, 92 A.D.3d 475, 938 N.Y.S.2d 72 (1st  Dep't
2012).  The Appellate Division held, in pertinent part:

> The court providently exercised its discretion in
> denying defendant's request to charge the jury that
> attempted theft of services would not establish that
> defendant attempted to steal money.  The court charged
> the jury that the People were required to prove an
> attempt to steal cash, and that was the only theory
> that the People advanced (see People v James, 35 AD3d
> 189 [2006], lv denied 8 NY3d 946 [2007]).  Accordingly,
> the additional language requested by defendant was
> unnecessary.
>
> The court also providently exercised its discretion in
> precluding defendant from eliciting his own
> out-of-court statement, given that the People did not
> open the door to that statement (see People v Massie, 2

NY3d 179, 184 [2004]).  The prosecutor's single, innoc-
uous question on redirect examination of an officer was
responsive to defendant's cross-examination.  The
prosecutor did not advance a "failure-to-deny" claim
(see People v Carroll, 95 NY2d 375, 385-387 [2000]) or
mislead the jury.  Defendant's constitutional chal-
lenges to the court's ruling are unpreserved, and we
decline to review them in the interest of justice.  As
an alternate holding, we reject these constitutional
claims on the merits.

Defendant's constitutional challenge to his sentencing
as a persistent violent felony offender is without
merit (see People v Bell, 15 NY3d 935 [2010], cert
denied 563 US —, 131 S Ct 2885 [2011]).

92 A.D.3d at 476, 938 N.Y.S.2d at 73.

The New York Court of Appeals denied leave to appeal on

May 21, 2012.  People v. Mack, 19 N.Y.3d 865, 970 N.E.2d 436, 947

N.Y.S.2d 413 (2012).

Petitioner now asserts three claims:  (1) the Trial

Court's refusal to instruct the jury that an attempt to evade the

taxi fare would not support the charge of attempted robbery

denied petitioner a fair trial; (2) the Trial Court improperly

precluded petitioner from introducing evidence of a purportedly

exculpatory statement petitioner made at the time of his arrest

and (3) petitioner improperly received an enhanced sentence as a

persistent violent felony offender based on findings made by the

Trial Judge instead of the jury (Petition for Writ of Habeas

Corpus, dated Nov. 11, 2013, (D.I. 1) at 6-9).

III.  <u>Analysis</u>

    A.  Legal Principles Applicable
       <u>to Section 2254 Petitions</u>

        1.  Habeas Review Is
           Limited to Alleged
           Violations of Federally
           <u>Protected Rights</u>

It is fundamental that habeas corpus relief is available in federal court only when an individual is incarcerated in violation of a federally protected right.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); <u>Howard v. Walker</u>, 406 F.3d 114, 121 (2d Cir. 2005) (noting that a claim that a conviction was obtained in violation of state law is not cognizable in federal court); <u>see also</u> <u>Smith v. Artus</u>, 610 F. App'x 23, 25-26 (2d Cir. 2015); <u>Adams v. Greiner</u>, 02 Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) (Lynch, D.J.) ("Habeas corpus is not an extension of the appeals process in the state court.  Rather, it is a remedy for violations of a defendant's rights under the federal constitution, and a very narrow remedy at that.").  Violations or errors of state law or procedure generally do not constitute

7

grounds for habeas review.  Estelle v. McGuire, supra, 502 U.S. at 67, citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S. 37, 41 (1984).

        2.   Procedural Bar as a
             Result of Petitioner's
             Failure to Assert a Claim
             in Accordance with State
             Procedural Requirements

     Even when a habeas petitioner has a constitutional claim, he may, nevertheless, be procedurally barred from asserting the claim if (1) it has not been asserted in state court proceedings in accordance with state procedural requirements and (2) the state courts rely on that violation of state procedural requirements to reject the claim.  As the Court of Appeals for the Second Circuit has explained:

             The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).  Moreover, "[t]his rule applies whether the state law ground is substantive or procedural." Id.

                         *     *     *

             The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus . . . .  [I]nvoking principles of comity and

8

> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard

v. Kindler, 558 U.S. 53, 55 (2009) ("A federal habeas court will

not review a claim rejected by a state court if the decision of

[the state] court rests on a state law ground that is independent

of the federal question and adequate to support the judgment."

(internal quotation marks omitted and brackets in original));

Cone v. Bell, 556 U.S. 449, 465 (2009) (same); Bierenbaum v.

Graham, 607 F.3d 36, 47 (2d Cir. 2010) (same); Cotto v. Herbert,

331 F.3d 217, 238 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103,

106 (2d Cir. 2002) ("[I]t is settled law that an independent and

adequate state law ground for a state court conviction cannot be

disturbed on habeas."), citing Coleman v. Thompson, 501 U.S. 722,

729-31 (1991); Brown v. State of New York, 04-CV-1087 (NG)(VVP),

2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas

corpus petitioner defaults a federal claim in state court . . .

by failing to preserve the claim for state appellate review . . .

, the independent and adequate state ground doctrine bars federal

habeas corpus review."); Rivera v. Moscicki, 03 Civ. 5810 (SAS),

2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin,

D.J.) ("A federal court generally may not review a state court

decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

> In Harris [v. Reed, 489 U.S. 255 (1989)], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S. Ct. 1038 (internal quotation marks omitted). We apply the Long/Harris presumption to the last "reasoned state judgment" . . . . See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000); see also Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have repeatedly stated that in order for federal habeas review to be procedurally barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

"Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." Murden v. Artuz, 497 F.3d 179,

10

191 (2d Cir. 2007), <u>quoting</u> <u>Green v. Travis</u>, 414 F.3d 288, 294
(2d Cir. 2005); <u>accord</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10
(1989); <u>Galmadez v. Keane</u>, 394 F.3d 68, 77 (2d Cir. 2005); <u>Glenn
v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996).

      However, even where the last reasoned decision of the
state court expressly rejects a federal constitutional claim on a
state procedural ground, federal habeas corpus review will not be
precluded if (1) the state procedural ground is not independent
and adequate, <u>see</u> <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir.
2006); <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241-42 (2d Cir. 2006);
<u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 238-39; (2) there is cause
for and prejudice from petitioner's failure to assert his claims
in accordance with state procedural law or (3) a failure to
consider the claim would result in a fundamental miscarriage of
justice. <u>Schlup v. Delo</u>, 513 U.S. 298, 318-22, 324-27 (1995);
<u>Coleman v. Thompson</u>, <u>supra</u>, 501 U.S. at 748-50; <u>Harris v. Reed</u>,
<u>supra</u>, 489 U.S. at 262; <u>Green v. Travis</u>, <u>supra</u>, 414 F.3d at 294.
A state law bar is not "adequate" when it is not "firmly estab-
lished and regularly followed . . . or . . . despite being firmly
established, [there] was an exorbitant application of a generally
sound rule." <u>Wright v. Duncan</u>, 500 F. App'x 36, 37 (2d Cir.
2012) (internal quotation marks and citations omitted).  A habeas
petitioner can establish "cause" by showing that "some objective

factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012).  A habeas petitioner can establish prejudice by showing that "[t]he error must have resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'" Gutierrez v. Smith, supra, 702 F.3d at 112, quoting Murray v. Carrier, 477 U.S. 478, 494 (1986).  Finally, to establish a fundamental miscarriage of justice, a habeas petitioner must show that a constitutional violation probably resulted in his conviction despite his actual innocence.  United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003) ("A habeas petitioner may avoid [a procedural] default . . . by showing . . . that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent."); accord Johnson v. Bellnier, 508 F. App'x 23, 25 (2d Cir. 2013); Sanchez v. Lee, 508 F. App'x 46, 48 (2d Cir. 2013).

3.   Standard of Review
     Applicable to
     <u>Non-Barred Claims</u>

If a habeas petitioner asserts a violation of federal law and complies with all applicable procedural requirements, a federal court may grant a writ of habeas corpus to a state prisoner where the state court's adjudication of the petitioner's federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  A decision is an unreasonable application of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

13

prisoner's case."  Williams v. Taylor, supra, 529 U.S. at 413;

accord Cullen v. Pinholster, 563 U.S. 170, 182 (2011); Lockyer v.

Andrade, 538 U.S. 63, 75 (2003).  Moreover, a "federal habeas

court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court deci-

sion applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreason-

able."  Williams v. Taylor, supra, 529 U.S. at 411; accord

Lockyer v. Andrade, supra, 538 U.S. at 75.

        The standard for relief under the Antiterrorism and

Effective Death Penalty Act ("AEDPA") "is difficult to meet,

because the purpose of AEDPA is to ensure that federal habeas

relief functions as a guard against extreme malfunctions in the

state criminal justice systems, and not as a means of error

correction."  Greene v. Fisher, 562 U.S. 86, ---, 132 S. Ct. 38,

43 (2011) (internal quotation marks omitted); accord Metrish v.

Lancaster, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786-87 (2013);

see Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 16 (2013)

(The "AEDPA erects a formidable barrier to federal habeas relief

for prisoners whose claims have been adjudicated in state

court.").

            "'[C]learly established Federal law'" for purposes of
            § 2254(d)(1) includes only "'the holdings, as opposed
            to the dicta, of this Court's decisions.'"  Howes v.

14

> Fields, 565 U.S. ---, ---, 132 S. Ct. 1181, 1187, 182
> L.Ed.2d 17 (2012) (quoting Williams v. Taylor, 529 U.S.
> 362, 412, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)).
> And an "unreasonable application of" those holdings
> must be "'objectively unreasonable,'" not merely wrong;
> even "clear error" will not suffice.  Lockyer v.
> Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155
> L.Ed.2d 144 (2003).  Rather, "[a]s a condition for
> obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the
> claim being presented in federal court was so lacking
> in justification that there was an error well under-
> stood and comprehended in existing law beyond any
> possibility for fairminded disagreement."  Harrington
> v. Richter, 562 U.S. ---, ---, 131 S. Ct. 770, 786-787,
> 178 L.Ed.2d 624 (2011).

White v. Woodall, 572 U.S. ---, ---, 134 S. Ct. 1697, 1702 (2014)

(brackets in original); accord Smith v. Artus, supra, 610 F.

App'x at 26.  "[R]eview under § 2254(d)(1) is limited to the

record that was before the state court that adjudicated the

prisoner's claim on the merits."  Greene v. Fisher, supra, 132 S.

Ct. at 44, citing Cullen v. Pinholster, supra, 131 S. Ct. at

1398.

Finally, a state court's determination of a factual

issue is "presumed to be correct," and the applicant bears the

"burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).  "[A] state-court

factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in

the first instance."  Wood v. Allen, 558 U.S. 290, 301 (2010)

15

(citation omitted); <u>accord</u> <u>Burt v. Titlow</u>, <u>supra</u>, 134 S. Ct. at
15.

      B.  Application of
          the Foregoing Principles
          <u>to Petitioner's Claims</u>

       1.  <u>Jury Charge</u>

      Petitioner first claims that he is entitled to habeas
relief because the Trial Court refused to charge the jury that an
attempt to evade paying the cab fare could not constitute at-
tempted robbery.

      Prior to the jury charge, defense counsel requested
that the Trial Court instruct the jury as follows:

> Property consists of tangible objects.  It does
> not include services such as transportation services or
> hotel services.  Obtaining these kind of services
> without intending to pay is covered by another statute.
>
> The defendant is not charged with stealing trans-
> portation services in this case.  If you find that the
> People have failed to prove beyond a reasonable doubt
> that the Defendant intended to steal property, then you
> must find him not guilty of both the robbery charges in
> the indictment.

(Tr. 404-05).  In support of the requested charge, defense
counsel cited <u>People v. James</u>, 35 A.D.3d 189, 825 N.Y.S.2d 465
(1st Dep't 2006), which arose out of the robbery of a cab driver,
in which the Appellate Division actually concluded that the

16

defendant in that case was <u>not</u> entitled to an instruction that "property," within the meaning of the New York's robbery statute, did not include services.  After hearing further from both counsel, the Trial Court concluded that it would be sufficient to instruct the jury that the People had to prove that petitioner "attempted to steal property, to wit, cash" (Tr. 409).  The relevant portion of the Court's charge to the jury provided:

> In order to find the Defendant guilty of [robbery in the second degree] the People are required to prove from all of the evidence in the case beyond a reasonable doubt each of the following five elements:
>
> One, that on or about July 2nd, 2007, in the County of New York the Defendant attempted to steal property, to wit, money, cash.
>
> Penal Law 155 insofar as it is applicable to this case defines property as any money or personal property.

(Tr. 490).

Petitioner argues that because his counsel conceded that petitioner's intention was to evade the fare for his cab ride,[2] the Trial Court's failure to instruct the jury that theft of services could not support a robbery conviction deprived petitioner of a fair trial.

---

[2]Although petitioner's counsel made this concession in her opening statement (Tr. 245), petitioner never testified concerning his intent, and the prosecution never stipulated that this was petitioner's intent.

17

"Errors in state jury charges are questions of state law and are therefore not reviewable on federal habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right." McEachin v. Ross, 951 F. Supp. 478, 483 (S.D.N.Y. 1997) (Chin, then D.J., now Cir. J.), citing Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990); United States ex rel. Stanbridge v. Zelker, 514 F.2d 45, 50 (2d Cir. 1975), abrogated on other grounds, 481 U.S. 186 (1987); accord Smith v. Artus, supra, 610 F. App'x at 25-26; Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). "For an erroneous state jury charge to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.'" Blazic v. Henderson, supra, 900 F.2d at 541 (brackets in original), quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973); accord Holmes v. Brown, 10-CV-03592 CBA, 2013 WL 6408496 at *8 (E.D.N.Y. Dec. 6, 2013), appeal dismissed, Docket No. 14-131 (2d Cir. Mar. 14, 2014), motion for relief from judgment denied, 2014 WL 1653265 (S.D.N.Y. Apr. 24, 2014); Neal v. Yelich, 12 Civ. 3022 (JMF), 2012 WL 6097659 at *3 (S.D.N.Y. Dec. 7, 2012) (Furman, D.J.). "A [habeas] petitioner seeking habeas relief based on a trial court's jury charge faces a heavy burden [because] 'not every ambiguity, inconsistency, or deficiency in a jury instruc-

18

tion rises to the level of a due process violation,' . . . ."
Suarez v. Bennett, 171 F. App'x 361, 364 (2d Cir. 2006), quoting
Middleton v. McNeil, 541 U.S. 433, 437 (2004).  In assessing a
claim that the jury charge was erroneous, "a single instruction
to a jury may not be judged in artificial isolation, but must be
viewed in the context of the overall charge." Cupp v. Naughten,
supra, 414 U.S. at 146-47.

Where, as here, the claim is based on the Trial Court's
failure to give a particular charge to the jury, a habeas court
focuses on three questions:  (1) was petitioner entitled to the
charge as a matter of state law, (2) did the Trial Court's
failure to give the charge so infect the trial that the resulting
conviction violated Due Process and (3) whether the state appel-
late court's affirmance of the conviction notwithstanding the
Trial Court's refusal to give the requested instruction consti-
tuted an objectively unreasonable application of the Supreme
Court's rulings on Due Process. Moronta v. Griffen, 610 F. App'x
78, 79 (2d Cir. 2015) (Summary Order); Smith v. Artus, supra, 610
F. App'x at 26; Harris v. Alexander, 548 F.3d 200, 203 (2d Cir.
2008), citing Davis v. Strack, supra, 270 F.3d at 124.  Peti-
tioner's claim here fails at the first level of inquiry.

Under New York law, a criminal defendant is entitled to
a jury instruction on a defense if the evidence, viewed in the

19

light most favorable to the defendant, would support that de-
fense.  People v. Butts, 72 N.Y.2d 746, 750, 533 N.E.2d 660, 663,
536 N.Y.S.2d 730, 733 (1988).  The problem with petitioner's
jury-charge claim is the absence of any evidence that would
support the theory that petitioner was merely attempting to avoid
paying the cab fare.  The only evidence concerning the events
preceding petitioner's arrest came from the cab driver and his
testimony did not describe any conduct that suggested petitioner
was merely intending to evade paying the fare.  Petitioner
instructed the driver to travel repeatedly between Brooklyn and
Manhattan and never left the cab despite being brought to each of
his destinations.  Logic suggests that an individual who was
seeking to evade paying cab fare would leave the cab at his
destination and either run from the driver or make a statement to
the driver that would lead the driver to believe that payment
would be forthcoming momentarily, for example, "Wait here, and
I'll pay you as soon as I get money from the ATM across the
street."  It is inconceivable that a person attempting to evade
the fare would announce his intention not to pay, threaten the
cab driver and remain in the cab long enough to give the driver
the opportunity to lock all the doors.  There was no evidence
here that petitioner attempted to leave the cab after the driver
demanded payment, and the driver's testimony that petitioner

demanded money from him as soon as he asked for petitioner for

payment is entirely inconsistent with the notion that defendant

was merely trying to evade the fare.

In addition, the charge adequately conveyed to the jury

that only the misappropriation or taking of tangible property

could support a conviction for robbery or attempted robbery.  In

addition to the excerpt quoted above, the Trial Court's charge

went on to explain to the jury that the offense of robbery

requires stealing or appropriating property:

> According to the law a person steals property and
> commits larceny where with the intent to deprive an-
> other of property or appropriate to himself he wrong-
> fully takes, obtains or withholds such property from
> the owner.
>
> According to the law, to deprive another of prop-
> erty means to withhold it or cause it to be withheld
> permanently or for so an extended period or under such
> circumstances that the major portion of [its] economic
> value or benefit is lost to him.
>
> To appropriate property of another to one's self
> means to exercise control over it permanently or for
> such an extended period of time or under such circum-
> stances as to acquire the major portion of his economic
> value or benefits.
>
> Takes property means to exercise control over it
> permanently or for such an extended period of time or
> under such circumstances as to acquire the major por-
> tion of [its] economic value or benefit.

(Tr. 490-91).  The language used by the Trial Court --

"obtain[ing]" or  "withhold[ing]" property, "appropriat[ing]"

property, "tak[ing]" property or "exercis[ing] control" over
property -- unmistakably suggests physical possession of some-
thing tangible; the charge does not make sense if transportation
services were the subject of the "robbery."

As noted above, the only case cited by petitioner to
the Trial Court was People v. James, supra, 35 A.D.3d 189, 825
N.Y.S.2d 465, which involved allegations similar to those at
issue here.  The defendant in that case was charged with robbing
a cab driver and claimed he was only evading the fare.  The
Appellate Division noted that there was no evidence suggesting
that plaintiff had committed forcible theft of services, and the
prosecution's evidence, if credited, established that defendant
and his co-defendant took cash from the driver's hand.  Given
those facts, The Appellate Division held that the Trial Court
properly concluded that the defendant was not entitled to a
charge that "property" for purposes of New York's robbery statute
did not include theft of services.  People v. James, supra, 35
A.D.3d at 190, 825 N.Y.S.2d at 465  Given the conclusion reached
by the James court, it simply does not support petitioner's claim
concerning the jury charge.

In his second motion for the appointment of counsel
(D.I. 23), petitioner made an additional argument in support of

his claim concerning the jury charge.  In the interest of completeness, I shall address that argument here.

In his second motion for the appointment of counsel, petitioner cited two sentences from the prosecution's summation in which he claimed that the prosecution erroneously suggested to the jury that fare evasion could constitute robbery.  Specifically, petitioner cited the following two sentences:  "'I submit to you that petitioner did a little bit of both.  It was either going to be a theft of service, which would be riding without paying the fare or a robbery from the beginning, either way it became a robbery" (Petitioner's Renewed Motion for the Appointment of Counsel, dated March 11, 2015 (D.I. 23) at 5, quoting Tr. 453).

Petitioner has distorted the meaning of these sentences by taking them out of context.  The pertinent passage of the prosecution's summation reads:

> I would ask you one other question with respect to the defense argument that this was a man just trying to get a free ride and I ask you this, if the Defendant were trying to get a free ride, why wouldn't he give a destination?
>
> Why wouldn't he give a destination where he could jump out and just run?
>
> Why continue to keep driving all over the city with[out] destination?

23

I submit to you the only reason why was so he could find either the time or opportunity or location where he could commit this robbery.

Now you may be wondering whether this was a crime of opportunity or something that the Defendant planned to do when he got in the cab.

It doesn't matter, but I submit to you that it was a little bit of both.

It was either going to be a theft of service, which would be riding without paying the fare or a robbery from the beginning, but either way it became a robbery.

As Judge White will instruct you, I don't have to prove that the Defendant intended when he entered the cab to commit this robbery.  I just have to prove to you that the Defendant's conscious objective or purpose was to commit the crime at the time that he tried to commit the crime.

It is of no consequence when the Defendant formed that intent. . . .

(Tr. 452-53).  Read in context, the prosecution's comments were

addressing the issue of whether, in order to be found guilty,

petitioner had to have the intent to commit a robbery when he

entered the cab or whether the jury could convict if it found

that petitioner formed the intent after entering the cab.  Fairly

read, the passage does not suggest that an intent or attempt to

evade the fare could constitute a robbery.

Because (1) there was no evidence suggesting petitioner

was merely attempting to avoid paying the fare; (2) the victim's

testimony was irreconcilably inconsistent with the theory that

24

petitioner was merely attempting to avoid paying the fare and (3) the Trial Court's charge did instruct the jury that, in order to convict, they had to find that petitioner had attempted to steal physical, personal property, the charge was correct as a matter of New York law and cannot serve as the basis for habeas relief.

      2.  Admissibility of the
          Statement Petitioner Made
          <u>Immediately Prior to His Arrest</u>

Petitioner next contends that the Trial Court erred in denying him permission to admit testimony concerning a statement he made immediately before his arrest.

Police Officer William Smiley, the officer who arrested petitioner, was called as a prosecution witness and testified to the circumstances of petitioner's arrest. In pertinent part, Smiley testified to the arrival of the cab at Fifth Avenue and 34th Street, the driver's report to Smiley of the attempted robbery and his arrest of petitioner immediately after the driver's statement (Tr. 342-45). Smiley further testified that he searched the cab and petitioner for a gun immediately after arresting petitioner (Tr. 347). Although Smiley testified at a pretrial hearing that before arresting petitioner, he asked petitioner "'[w]hat's going on?'" and that petitioner responded that he "only wanted a ride" (Tr. 11), the prosecution did not

25

elicit any testimony from Smiley concerning the fact of a conver-
sation with petitioner or the substance of anything petitioner
said.

On cross-exam, defense counsel elicited the following
testimony concerning petitioner's arrest:

> Q.      When you first approached Mr. Mack I think you
> said that he was sitting in the back of the cab?
>
> A.      Correct.
>
> Q.      And when you approached him you had a conversation
> with him?
>
> A.      Yes.
>
> Q.      And that was after you heard what [the cab driver]
> had to say?
>
> *      *      *
>
> A.      Yes, I spoke to him after that.
>
> Q.      And when you spoke with Mr. Mack that was before
> any search of the cab or Mr. Mack's person, correct?
>
> A.      Yes.

(Tr. 363).

On re-direct examination, the prosecution asked Smiley
the following two questions concerning his exchange with peti-
tioner immediately prior to petitioner's arrest:

> Q.      Now, you were asked whether you spoke with Mr.
> Mack.
>
>         Do you recall being asked that on cross-examina-
> tion?

26

      A.        Yes.

      Q.        After speaking with Mr. Mack you arrested him, is that correct?

      A.        Correct.

(Tr. 368-69).

      Defense counsel requested a side bar after the foregoing testimony and claimed that the prosecution's questioning had opened the door to the defense's eliciting testimony concerning petitioner's statements to Smiley. Specifically, counsel argued that the testimony that petitioner had been arrested immediately after his statement to Smiley would lead the jury to infer that petitioner's statement was inculpatory (Tr. 371). After hearing from both sides, the Trial Court denied the application, finding that the prosecution had not opened the door because it was the defense that first elicited testimony concerning the conversation between petitioner and Smiley (Tr. 371-72). The defense did not raise any Constitutional arguments with the Trial Court concerning its attempt to elicit petitioner's statement from Smiley.

      On direct appeal, the prosecution argued that any Constitutional claim concerning the admissibility of petitioner's pre-arrest statement had been waived because no such claim had been raised before the Trial Court (State Court Records (D.I. 7) at SR 192-93). As noted above, the Appellate Division agreed

27

with the prosecution on this issue, expressly finding that any
constitutional claim concerning the admissibility of petitioner's
pre-arrest statement had not been preserved.  <u>People v. Mack</u>,
<u>supra</u>, 92 A.D.3d at 476, 938 N.Y.S.2d at 73.

      The Appellate Division's clear and unequivocal rejec-
tion of this claim on state procedural grounds precludes it from
serving as a basis for habeas relief.  The fact that the Appel-
late Division went on to state how it would have resolved the
merits of the claim if it were to address the merits does not
change the nature of its determination.

      Petitioner raises no argument in response to the
procedural bar -- he does not claim that the state procedural
rule is not independent and adequate, he does not claim that
there was cause for and prejudice from his failure to comply with
New York's preservation requirement and he does not claim that a
failure to address the merits of his claim will result in a
fundamental miscarriage of justice.

      Moreover, it does not appear that petitioner could
mount a colorable argument that the state procedural rule on
which the Appellate Division relied was not adequate and inde-
pendent.  New York's contemporaneous objection rule has routinely
been upheld as an adequate and independent state procedural bar
sufficient to preclude federal review.  <u>See</u> <u>Garcia v. Lewis</u>,

28

supra, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules." (citation omitted)); see also Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011); Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007); Vargas v. Keane, 86 F.3d 1273, 1280 (2d Cir. 1996) (procedural default resulting from trial counsel's failure to object to prosecutor's remarks is an independent and adequate state law ground for rejection of a habeas claim); Watkins v. Perez, 05 Civ. 477 (GEL), 2007 WL 1344163 at *16-*17 (S.D.N.Y. May 7, 2007) (Lynch, then D.J., now Cir. J.) (same).

Finally, I note that if I were to reach the merits of the Constitutional claim, petitioner would still not be entitled to relief.  It is well settled that when elicited by the defendant himself, a defendant's prior statement is inadmissible hearsay.  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); accord United States v. Kadir, 718 F.3d 115, 124 (2d Cir.) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . . not admissible.") (inner quotation marks omitted), cert. denied, 134 S.Ct. 451 (2013).  Although there is a limited Due Process

29

exception to the prohibition against hearsay evidence when, under
certain circumstances, a criminal defendant seeks to offer the
confession of a third party, see generally Chambers v. Missis-
sippi, 410 U.S. 284, 301-03 (1973); Morales v. Portuondo, 154 F.
Supp. 2d 706, 722-23 (S.D.N.Y. 2001) (Chin, then D.J., now Cir.
J.), I am aware of no clearly established Supreme Court precedent
holding that the prohibition against a criminal defendant offer-
ing hearsay evidence of his own prior statements violates Due
Process.  The post-Chambers decisions, cited above, that reaffirm
the principle that a criminal defendant may not introduce hearsay
evidence of his own prior statements, demonstrates that no such
precedent exists.  Thus, even if it were appropriate to reach the
merits of this claim, it would not provide a basis for habeas
relief.

    3.  Apprendi Claim

       Petitioner's final claim -- that the Trial Court,
instead of the jury, improperly made the findings of fact that
permitted petitioner to be sentenced as a persistent violent
felony offender -- also appears to lack merit.

       The precise nature of this claim is unclear.  The
petition itself appears to contend that the question of whether
petitioner had any prior convictions should have been resolved by

30

the jury and not the Trial Court.  If this is petitioner's contention it is squarely in conflict with the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).  In that case, the Supreme Court held that  "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490 (emphasis added).  To the extent petitioner is claiming that the jury should have determined whether he had any prior convictions, his argument is contrary to Apprendi.

Again, in his renewed motion for the appointment of counsel, petitioner raises a different argument concerning his Apprendi claim which I shall consider in the interest of completeness.  At sentencing, the Trial Court stated:  "The jurors found unequivocally that you are guilty, but having done that, now you have to face the consequences of that, and this robbery occurred on July 2, 2007, and you robbed a taxicab driver" (Sentencing Tr. 16).[3]  Petitioner appears to be claiming that, in violation of Apprendi v. New Jersey, supra, 530 U.S. 466, the Trial Judge found petitioner guilty of robbery while the jury had found him guilty only of attempted robbery.

---

[3]"Sentencing Tr." refers to the transcript of petitioner's setencing hearing.

31

If petitioner is basing his <u>Apprendi</u> claim on the Trial Judge's comments at sentencing, it is unexhausted.  Petitioner's <u>Apprendi</u> claim on direct appeal asserted that the Due Process Clause was violated because his sentence was enhanced on the basis of a prior conviction and the fact of that prior conviction was not found by the jury.[4]  The <u>Apprendi</u> claim petitioner appears to be asserting in his renewed request for the appointment of counsel is based on entirely different facts from the claim he asserted on appeal.  The claim he asserts in his renewed application for counsel --  that the Trial Judge made a factual finding at sentencing that petitioner had committed an actual robbery and not just an attempted robbery -- does not appear to ever have

---

[4]The pertinent passage of petitioner's brief on direct appeal provides:

> The court adjudicated Mr. Mack as a persistent violent felon at the sentencing hearing, conducted without a jury, in accordance with New York Criminal Procedure Law §§ 400.15(7)(a), 400.16(2), increasing his maximum sentence beyond what would be legal for a first time conviction.  <u>See</u> N.Y. Penal Law § 70.02(3)(a)-(b) (McKinney 2009).  Because prior convictions are required to impose the enhanced sentence, the Due Process clauses of the Federal and State Constitutions and the right to a trial by jury require that a jury determine the issue of Mr. Mack's status as a persistent violent felony offender.  U.S. Const. amends. VI, XIV; N.Y. Const. art. I, §§ 2, 6; <u>see Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

(Brief for Defendant-Appellant, dated Dec. 6, 2010, submitted in this matter as part of State Court Records (D.I. 7) at SR-44).

been raised on direct appeal.  If this is petitioner's <u>Apprendi</u> claim, it would have to be dismissed as unexhausted and procedurally barred.  As a general principle, a habeas petitioner cannot assert factual or legal arguments in a habeas petition that were not previously made to the state courts.  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001); <u>accord</u> <u>Reed v. Duncan</u>, 326 F. App'x 582, 583-84 (2d Cir. 2009) (Summary Order).  Because petitioner's new <u>Apprendi</u> claim was not asserted in New York's courts, it cannot be asserted here.[5]

   4.  <u>Summary</u>

     Because all of petitioner's claims are either non-cognizable, procedurally barred or fail on the merits, the petition should be denied.[6]

---

   [5]Even if the claim could be asserted here, it appears to be based on nothing more than a slip of the sentencing judge's tongue.  The actual judgment of conviction properly reflects the offense of conviction as attempted robbery in the second degree (Verdict Sheet dated February 22, 2008, submitted in this matter as part of State Court Records (D.I. 7) at SR 62-63).

   [6]Petitioner also seeks what he characterizes as a "stay and abeyance" (Petition for Writ of Habeas Corpus, dated Nov. 11, 2013, (D.I. 1) at 15-16).  Petitioner appears to seek the stay to develop additional facts to support existing and potentially new claims.  This aspect of the petition should also be denied.  A stay of a habeas petition may be appropriate where the petition contains both exhausted and unexhausted claims and procedures are still available to the petitioner to assert the unexhausted claims in state court.  <u>See</u> <u>generally</u> <u>Rhines v. Webber</u>, 544 U.S.
                                                    (continued...)

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued.  28
U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further."  <u>Middleton v.
Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005) (<u>per</u> <u>curiam</u>)
(internal quotation marks and citation omitted, ellipsis in
original); <u>see</u> <u>also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir.
2005) (<u>per</u> <u>curiam</u>).  For the reasons set forth above, I conclude

---

[6](...continued)
269, 277-78 (2005); <u>Zarvela v. Artuz</u>, 254 F.3d 374, 378-82 (2d
Cir.2001).  Petitioner does not identify any unexhausted federal
claims that he seeks to exhaust in state court and that could
still be raised in state court.  In addition, any claim
concerning the sentencing judge's apparently inadvertent
misidentification of the offense of conviction can no longer be
raised in state court because it appeared on the record and could
have been raised on direct appeal.  <u>See</u> N.Y. Crim. Proc. L. §
440.10(2)(c).

that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

       I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).

V.  <u>OBJECTIONS</u>

       Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Gregory H. Woods, United States District Judge, 500 Pearl Street, Room 2260, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Woods.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **<u>WILL</u>** RESULT IN A WAIVER OF OBJECTIONS AND **<u>WILL</u>** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir.

1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054

(2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         November 24, 2015

                         Respectfully submitted,


                         HENRY PITMAN
                         United States Magistrate Judge

Copies mailed to:

Mr. Anthony Mack
DIN 08-A-1143
Auburn Correctional Facility
135 State Street
P.O. Box 618
Auburn, New York   13021

Lisa E. Fleischmann, Esq.
Joanna Hershey, Esq.
Assistant Attorneys General
State of New York
120 Broadway
New York, New York   10271

36